WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Monje and Beth Monje, husband and wife, individually and on behalf of their minor son; and RM, minor son, | No. CV-09-1713-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Spin Master Inc., a Delaware corporation; Spin Master Limited, a Canadian company; Toys "R" US-Delaware Inc.; and Moose Enterprises Proprietary Limited, an Australian company, | |
| Defendants. | |
| Spin Master, Inc., a Delaware corporation; Spin Master, LTD., a Canadian company, | |
| Third-Party Plaintiffs, | |
| vs. | |
| Bureau Veritas Consumer Products Services, Inc., | |
| Third-Party Defendants. | |

Pending before the Court is Third-Party Defendant's Motion to Sever and Transfer the Third-Party Claims (Doc. 208) which is joined by the Plaintiffs (Doc. 222). A Response in Opposition has been filed by the Spin Master Defendants (Doc. 224) and joined by Moose Enterprises (Doc. 225). For the following reasons the Motion to Sever and Transfer is granted.

**BACKGROUND**

This is a tort action based on harm caused to a child who ingested a children's art supply product called Aqua Dots. Spin Master, Inc., Spin Master, Ltd., and Toys "R" Us-Delaware Inc. (collectively "Spin Master") were the distributors of Aqua Dots and are defendants in this action. Spin Master brought a third-party claim for common law and implied indemnity against the entities that performed toxicity testing on the Aqua Dots. The only remaining third-party defendant, Bureau Veritas Consumer Products Services Inc. ("Bureau Veritas"), now moves to sever and transfer the third-party claim.

Spin Master is litigating claims related to the Aqua Dots product in various actions. On December 17, 2008, Spin Master filed a lawsuit still pending in the Western District of New York (the "New York court") against Bureau Veritas and related entities. In that lawsuit, Spin Master seeks damages from Bureau Veritas for its litigation exposure and settlement costs incurred in the personal injury and class action lawsuits. On July 13, 2009, Plaintiffs filed this action in state court in Arizona. (Doc. 1.) It was subsequently removed to this Court, then transferred to the Northern District of Illinois as part of multidistrict litigation, and finally transferred back to this Court. (Docs. 1, 14, 50.) The case in the New York court and the third-party claim in this case both center around allegations that Bureau Veritas failed to promptly and properly test the toxicity of Aqua Dots and are therefore liable for harm caused by Spin Master's distribution of the Aqua Dots.

**DISCUSSION**

**I.     Legal Standard for Motion to Transfer Venue**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In other words, "section 1404(a) requires two findings—that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (quotations omitted).  The party

1    moving for transfer has the burden of showing that transfer is appropriate. *Jones v. GNC*

2    *Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

3    **II.     The Third-Party Claims Might Have Been Brought in the New York Court.**

4         Bureau Veritas asks that the third-party claim be transferred to the New York

5    court. The threshold inquiry is whether the action "might have been brought" in the

6    proposed transferee district. 28 U.S.C. § 1404(a). As proof for this requirement, Bureau

7    Veritas notes the action already pending between the parties in the New York court that

8    was brought by Spin Master. Spin Master does not directly claim that this action could

9    not have been brought in New York. Instead, it argues that the collateral-source defense

10   raised by Bureau Veritas in the New York case might prevent Spin Master from

11   recovering there. However, Spin Master argues in a footnote that Arizona law and not

12   New York law will apply. The parties disagree about which law may be applicable if this

13   Motion to Sever and Transfer is granted and what effect that might have on recovery.

14        These disagreements are not relevant to this threshold inquiry. The only question

15   is whether the action "might have been brought" in New York and not whether the

16   defenses raised or the outcome achieved would be the same. The Court's discretionary

17   authority to grant transfer only exists if the action might have been brought in New York.

18   Here, the threshold requirement is met and the objections do not bar the Court's

19   discretionary authority to transfer. Instead of barring transfer, this line of argument about

20   applicable law and available defenses is only relevant in influencing the Court's

21   discretion to the extent that it weighs on the convenience of the parties and witnesses or

22   the interest of justice.

23   **III.    The Interests of Justice Warrant Transfer.**

24        In determining whether transfer would be in the "interest of justice," § 1404(a),

25   the Court may consider a variety of factors, but it has "discretion to adjudicate motions

26   for transfer according to an individualized, case-by-case consideration of convenience

27   and fairness." *Jones*, 211 F.3d at 498.  The factors the Court may consider include, *inter*

28   *alia*, the parties' convenience, witnesses' convenience and availability, availability of

1   compulsory process to compel unwilling witnesses' attendance, relative financial

2   burdens, access to sources of proof, differences in litigation costs, contacts with the

3   chosen forum, the forums' jurisdiction over the parties, the forums' relative familiarity

4   with the governing law, public policy, the existence of any forum selection clauses, and

5   the courts' relative docket congestion. *Jones*, 211 F.3d at 498–99; *Sparling v. Hoffman*

6   *Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988); *Decker Coal Co. v. Commonwealth*

7   *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Costco Wholesale Corp. v. Liberty Mut.*

8   *Ins. Co.*, 472 F. Supp.2d 1183, 1196 (S.D. Cal. 2007). These factors are often categorized

9   as the parties' private interest factors or the public interest factors. *Atl. Marine Const. Co.*

10  *v. U.S. Dist. Court for W. Dist. of Texas*, 12-929, 2013 WL 6231157 *11 n.6 (U.S. Dec.

11  3, 2013).

12          Furthermore, "[a]s a general rule, cases should be transferred to districts where

13  related actions are pending." *Impra Inc. v. Quinton Instruments Co.*, CIV-90-0383 PHX

14  WPC, 1990 WL 284713 *3 (D. Ariz. June 26, 1990). "The feasibility of consolidation is

15  a significant factor in a transfer decision . . . although even the pendency of an action in

16  another district is important because of the positive effects it might have in possible

17  consolidation of discovery and convenience to witnesses and parties." *A. J. Indus., Inc. v.*

18  *U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974); *Pacesetter*

19  *Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982) ("There is a generally

20  recognized doctrine of federal comity which permits a district court to decline jurisdiction

21  over an action when a complaint involving the same parties and issues has already been

22  filed in another district.").

23          The Supreme Court recently clarified the inquiry into how courts should consider

24  motions to transfer under § 1404(a) when a forum-selection clause is present. "[A] proper

25  application of § 1404(a) requires that a forum-selection clause be 'given controlling

26  weight in all but the most exceptional cases.'" *Atl. Marine Const. Co.*, 2013 WL 6231157

27  *9 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). Specifically,

28  courts should give no weight to the plaintiff's choice of forum and should not consider

1    the parties' private interest factors because the forum-selection clause "represents the
2    parties' agreement as to the most proper forum." *Id.* \*11 (quoting *Stewart Org., Inc. v.*
3    *Ricoh Corp.*, 487 U.S. 22, 30 (1988)). Therefore, the only consideration before a court is
4    whether a given case is the rare occasion where the public interest factors defeat the
5    counterweight of the forum-selection clause. *Id.*

6         Here, transfer is appropriate and the existence of the New York action and the
7    forum selection clause are the decisive factors. With regards to the preexisting action in
8    New York, Spin Master argues that there are several differences between that action and
9    this one. However, none of the issues raised are significant enough to defeat the general
10   rule favoring transfer to districts with related actions pending.

11        First, Spin Master argues that the actions are different because its insurer currently
12   has no interest in the New York action and might have to take one if the third-party claim
13   is transferred. But Spin Master's insurer is not a party to this litigation. Spin Master
14   argues that the insurer would become a real party in interest or have a subrogation claim
15   if Spin Master were to settle or be found liable. Assuming without deciding that this is
16   true, there is no settlement at this time and liability has not been determined. The Court
17   will not consider the interests of a possible future party in determining the
18   appropriateness of transferring the claim now.

19        Second, Spin Master argues that the claims raised in the New York action are
20   different than those raised here. Although the New York action may be seeking additional
21   compensation and pursuing different causes of action, it is also seeking recovery for the
22   same injury at issue here. The New York action alleges negligence and initially
23   emphasized that it was seeking lost profits and other damages to Spin Master's business
24   interests that resulted from the recall of Aqua Dots. (Doc. 208-1 at 15–18.) After the
25   filing of the Monje's action and others, Spin Master made it clear in the New York action
26   that it was also seeking "litigation exposure and settlements costs" based on the "multiple
27   personal injury and class action lawsuits against Spin Master throughout the country."
28   (*Id.* at 23, 25.) That language clearly references this action even if it does not mention the

Monje's case by name. Although the indemnity cause of action here is a different legal theory than the ones pursued in New York, Spin Master is seeking the same recovery for the same injury. Spin Master chose to bring its claims in New York and chose the theories of recovery that it would pursue there. Spin Master filed the third-party claim in this action three years after making a damages claim in New York that encompassed all personal injury suits including this one. There is no reason that Spin Master should be granted a second bite at the apple in a new forum with a new theory of recovery even if the New York action is moving slower than Spin Master would like.

The other decisive factor is the existence of the forum selection clause. The relationship between Spin Master and Bureau Veritas is a contractual one that was created and is governed by the "Test Request Form" and its conditions. (*Id.* at 29–30.) In that contract, Spin Master "agrees that any disputes arising out of this agreement . . . will be governed and settled under the applicable principles of New York Law, under jurisdiction of New York Courts and that venue in any such action shall be in the County of Erie." As the Supreme Court recently reemphasized, forum-selection clauses are typically given controlling weight. In evaluating this transfer request, Spin Master's choice of forum is disregarded and the private interest factors such as costs and convenience of witnesses are not weighed by the Court because Spin Master and Bureau Veritas agreed that New York was the proper venue.

The public interest factors are still considered, but here they weigh in favor of transfer. The forum-selection clause specifies the governing law as New York law and the New York court is more familiar with that law. New York has a greater interest in serving as forum because the contract and interactions between the parties occurred there. The relative docket congestion also does not weigh against transfer as this district currently has numerous judicial vacancies.

Transferring the third-party claim is appropriate even though doing so will not completely remove the issues related to the toxicity testing from this litigation. The adequacy of the testing was raised repeatedly in Plaintiffs' complaint and will likely

1    remain an issue in the negligence cause of action and the punitive damages sought by the

2    Plaintiffs in the primary case. However, the issues addressed and the evidence presented

3    at trial will be narrowed by transferring Spin Master's indemnity claim to New York,

4    where Spin Master is already pursuing its other claims against Bureau Veritas.

5    **IV.    Severance of the Third-Party Claim.**

6           In order to transfer the third-party claim to the New York court while retaining the

7    primary action in this case, the third-party claim must be severed.  Rule 14(a)(4) provides

8    that "[a]ny party may move to strike the third-party claim, to sever it, or to try it

9    separately." Here, the third-party defendants and the plaintiffs have permissibly moved to

10   sever the third-party claim.

11          In determining whether to order severance, the Court has broad authority. *See*

12   *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) (stating that "[t]he

13   trial court has broad discretion to sever issues"); *Williams v. Felker*, 2006 WL 495994, at

14   *1 (E.D. Cal. March 1, 2006) (stating that under Rule 21, "courts have broad discretion

15   regarding severance"). This Court has decided to transfer the third-party claim to New

16   York. Severance is a necessary precursor to that transfer, and it is justified by the same

17   reasoning laid out above.

18                                        **CONCLUSION**

19          This Court can transfer the third-party claim under § 1404(a) because it could have

20   been initially brought in New York. The Court does so because a similar action is already

21   pending there and the forum selection clause specifies New York as the agreed upon

22   forum. Accordingly, the third-party claim is severed and transferred to the Western

23   District of New York.

24          **IT IS HEREBY ORDERED** that Third-Party Defendant's Motion to Sever and

25   Transfer the Third-Party Claims (Doc. 208) is **granted.**

26   **/ / /**

27   **/ / /**

28

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **sever** the third-party claim and parties and to **transfer** them to the Western District of New York.

Dated this 10th day of December, 2013.

_A. Murray Snow_
G. Murray Snow
United States District Judge